IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| MICHAEL D. LYNCH and CANDENCE B. LYNCH, | ) ) ) | |
| Appellants, | ) ) | |
| v. | ) ) | C.A. No. 20-182 (MN) |
| ALAN M. JACOBS, in his capacity as the FORMER LIQUIDATING TRUSTEE OF THE NEW CENTURY LIQUIDATING TRUST, | ) ) ) ) ) | |
| Appellee. | ) | |

## <u>MEMORANDUM OPINION</u>

Michael D. Lynch and Candence B. Lynch, Miami, FL – *Pro se* Appellants.

Victoria A. Guilfoyle, Brian J. Hall, BLANK ROME LLP, Wilmington, DE; Mark S. Indelicato, Jeffrey Zawadski, HAHN HESSEN LLP, New York, NY – Attorneys for Appellee.

February 16, 2021
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE:

Pending before the Court is an appeal by Michael B. Lynch and Candence D. Lynch ("Appellants") from the Bankruptcy Court's Reissued Memorandum Order, dated January 22, 2020 (Bankr. D.I. 11562)[1] ("Order") which denied Appellants' amended motion to reopen the Chapter 11 bankruptcy cases of New Century TRS Holdings, Inc. and certain affiliated debtors ("Debtors") (Bankr. D.I. 11553) ("Motion to Reopen").  Also pending before the Court is Appellants' *Combined Motion for the Court to Take Judicial Notice of Relevant Documents Contained in Public Records and to Grant Oral Argument* (D.I. 15) ("Combined Motion"), the opposition thereto (D.I. 16) ("Opposition") filed by appellee Alan M. Jacobs, as Former Trustee for the New Century Liquidating Trust ("Trustee"), and Appellants' reply in further support (D.I. 17).  For the reasons set forth herein, the Court will deny the Combined Motion and affirm the Order.

I.      **BACKGROUND**

A.      **The Debtors' Chapter 11 Cases**

Debtors filed for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware on April 2, 2007.  (Bankr. D.I. 11562 ¶ 1).  On April 23, 2008, the Debtors filed a plan ("Original Plan"), which was confirmed by the Bankruptcy Court on July 15, 2008 ("Original Confirmation Order").  (*Id.* ¶ 2).  The Original Plan became effective on August 1, 2008 ("Original Effective Date"), and, pursuant to the terms of the Original Plan, the New Century Liquidating Trust Agreement ("Trust Agreement") was executed, thereby creating the Trust and appointing the Trustee.  (*Id.* ¶ 3).

---

[1]     The docket of the Chapter 11 cases, captioned *In re New Century TRS Holdings, Inc.*, No. 07-10416 (BLS) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __."

Thereafter, this Court issued an opinion reversing the Original Confirmation Order.  On November 20, 2009, the Bankruptcy Court entered an order ("Modified Confirmation Order") confirming a modified plan ("Modified Plan"), which became effective on December 1, 2009.  (*Id.* ¶ 4).  The Modified Plan (a) confirmed that all actions taken by the Trustee subsequent to the Original Effective Date were valid and binding; (b) adopted, ratified, and confirmed the formation of the Trust as of the Original Effective Date; (c) adopted, ratified, and confirmed the Trust Agreement as of the Original Effective Date; and (d) adopted, ratified, and confirmed the appointment of the Trustee as trustee of the Trust as of the Original Effective Date.  (*Id.* ¶ 5). Relevant to this appeal, paragraph 69 of the Modified Confirmation Order provides, in relevant part:

> General Authority.  [T]he Liquidating Trust . . . shall execute such documents, and take such other actions, as are necessary to effectuate the transactions provided for in this Modified Plan. Additionally, with respect to mortgage loans purchased from one or more of the Debtors prior to or subsequent to the Petition Date, the Liquidating Trust shall execute, upon written request, and at the expense of the requesting party, any powers of attorney as shall be prepared by the requesting party and reasonably satisfactory to the Liquidating Trustee, as applicable, necessary to fully effectuate the transfer of such loan or otherwise to effect the appropriate transfer of record title or interest in such loan, including, without limitation, any powers of attorney as may be necessary to allow the purchaser of such mortgage loan from the Debtor (including any trustee or servicer on behalf of the purchaser) to complete, execute and deliver, in the name of and on behalf of the applicable Debtor or the Liquidating Trust, any required assignments of mortgage or instruments of satisfaction, discharge or cancellation of mortgages, mortgage notes or other instruments related to such mortgage loan; provided, however, that the party making the requests presents evidence reasonably satisfactory to the Liquidating Trustee, as the case may be, of the validity of the transfer being effectuated and that the loan being transferred was purchased from the applicable Debtor; provided, further, that the Liquidating Trust shall not be liable for the actions of the requesting party under any such powers of attorney ….

(*Id.* ¶ 6; Bankr. D.I. 9957, ¶ 69) (emphasis in original).

Years later, on May 18, 2016, the Bankruptcy Court entered a customary order authorizing the Trustee to destroy the Debtors' and Trust's records and documents ("Records") subject to certain procedures set forth in that order ("Document Destruction Order").  (Bankr. D.I. 11562 ¶ 8).  On August 25, 2016, the Court entered a Final Decree closing the Debtors' bankruptcy cases, discharging the Trustee of his obligations under paragraph 69 of the Modified Confirmation Order, and fully releasing and discharging the Trustee of all of his duties and obligations as Trustee (other than with respect to certain ministerial obligations related to Trust wind down and Records destruction ("Trailing Obligations")).  (*Id.*).  On September 30, 2016, the Trustee made a final distribution of the Trust assets and completed disposal of the Records pursuant to the Document Destruction Order.  (*Id.* ¶ 9; Bankr. D.I. 11556 ¶ 15).  In February of 2017, the Trustee completed the Trailing Obligations, and the Trust terminated by operation of its terms and in accordance with the terms of the Final Decree.  (*Id.* ¶ 16).

### B.     Appellants' Loan and the Florida Litigation

#### a.     Florida Bankruptcy Court

On or about June 2, 2004, Appellant Michael Lynch executed a promissory note ("the Note") in favor of New Century Mortgage Corporation ("NCMC") in the principal amount of $224,000 ("Loan") secured by a mortgage ("Mortgage") executed by Appellants and granting a lien upon real property in Miami, Florida.  (Bankr. D.I. 11562 ¶ 10).

On July 24, 2012, Appellants filed a petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida ("Florida Bankruptcy Court").  (*Id.* ¶ 11).  On February 19, 2013, Deutsche Bank National Trust Company ("Deutsche Bank") as trustee for the New Century Home Equity Loan Trust Series 2004-A Asset Backed Pass-

Through Certificates, Series 2004-A ("Securitized Trust"), filed a notice of appearance and request for service in the Florida bankruptcy case as the secured creditor under the Note and Mortgage. (*Id.* ¶ 12).

On February 26, 2013, Appellants filed a motion against Deutsche Bank in the Florida bankruptcy case to compel production of the Note, Mortgage, and all assignments of the Mortgage. That motion was denied by an order of the Florida Bankruptcy Court on April 5, 2013. (*Id.* ¶ 13). On October 23, 2014, Appellants filed an adversary proceeding ("Florida Adversary Proceeding") against Deutsche Bank (as trustee for the Securitized Trust) and Ocwen Loan Servicing, LLC ("Ocwen," and together with Deutsche Bank, "Florida Defendants") seeking declaratory judgment that the Florida Defendants were not the owners of the Loan and could not enforce it. (*Id.* ¶ 14; Bankr. D.I. 11556 Ex. 1 at 10-14).

In the summer of 2016, in accordance with paragraph 69 of the Modified Confirmation Order and at the request of the Florida Defendants, the Trust, as successor to NCMC, (a) prepared a "business records" affidavit (Bankr. D.I. 11556 Ex. 2 ("Walker Affidavit")), and (b) executed a Limited Power of Attorney (*id.* Ex. 3 ("LPOA")) appointing Deutsche Bank (as trustee for the Securitized Trust) as NCMC's attorney-in-fact with respect to the mortgage loans originated by NCMC and transferred to, and securitized as part of, the Securitized Trust (including Appellants' Loan) for the limited purpose of executing such documentation as necessary to correct or otherwise remedy any errors of deficiencies contained in any documentation prepared or executed by NCMC, and relating to or evidencing the transfer of such mortgage loans. (Bankr. D.I. 11562 ¶ 15). The Walker Affidavit provided that "[f]ollowing the origination of the Loan, NCMC sold the Loan to NC Capital [Corporation] who, in turn, sold the Loan to New Century Mortgage Securities, Inc.

On or about August 4, 2004, the Loan was transferred to, and securitized as part of, the [Securitized Trust]." (*Id.* n.14; Bankr. D.I. 11556 Ex. 2 ¶ 7).

On February 15, 2017, the Florida Defendants filed a motion for summary judgment in the Florida Adversary Proceeding ("Summary Judgment Motion"), attaching, *inter alia*, the Walker Affidavit, LPOA, and an allonge making the Loan payable to the trustee of the Securitized Trust that was executed by the Deutsche Bank pursuant to the LPOA ("the Allonge"). (Bankr. D.I. 11562 ¶ 16). Appellants opposed the Summary Judgment Motion and cross-moved for summary judgment contesting the validity of the Walker Affidavit, the LPOA, the Allonge, and the transfer of the Loan by arguing, *inter alia*, that they were "*void ab initio.*" (Bankr. D.I. 11562 ¶ 17; Bankr. D.I. 11556 Ex. 4 ¶¶ 3, 9, 31-32, 42; Ex. 5 ¶¶ 27, 29-30; Ex. 6 at 2-3, 5).

The Florida Bankruptcy Court found that the undisputed evidence showed that New Century was the holder of the Note, that the Note was transferred to the Securitized Trust, and that, accordingly, the Securitized Trust acquired the same right to enforce the Note as that of New Century. The Florida Bankruptcy Court thus granted the Florida Defendants' Summary Judgment Motion and denied Appellants' cross-motion for summary judgment. (Bankr. D.I. 11556 Ex. 7 ("Florida Judgment")).

On November 9, 2017, the United States District Court for the Southern District of Florida ("Florida District Court") affirmed the Florida Judgment (*id.* Ex. 11) and, on January 1, 2018, denied Appellants' motion for reconsideration (*id.* Ex. 14). On November 15, 2018, the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") affirmed the Florida Judgment (*id.* Ex. 17) and, on January 11, 2019, denied Appellants' petition for rehearing (*id.* Ex.

19).  On May 20, 2019, the United States Supreme Court ("Supreme Court") denied Appellants' petition for writ of certiorari.  (*Id.* Ex. 24).[2]

### C.     The Amended Motion to Reopen and Order

On November 7, 2019, Appellants filed their amended Motion to Reopen, seeking to reopen the Debtors' bankruptcy cases ostensibly for the purpose of filing an adversary proceeding against the Trust and the Trustee asserting claims for (a) lack of legal authority, (b) negligence, (c) gross negligence, and (d) intent to defraud in connection with the preparation of the Walker Affidavit and execution of the LPOA.  (Bankr. D.I. 11562 ¶ 19; Bankr. D.I. 11553 ¶ 27).  The Motion to Reopen sought a "declaratory judgment that the LPOA, Allonge and Walker [A]ffidavit are "*void ab initio*."  (Bankr. D.I. 11553 ¶ 36).  The Motion to Reopen amended the original motion filed by Appellants by clarifying that any such claims would not be brought against the Trustee in his individual capacity.  (*See id.* at 18 (striking the word "individually" with respect to Trustee)).  Following oral argument, the Bankruptcy Court denied the Motion to Reopen based on its determination that:

> no valid purpose will be served by reopening this case because the [Appellants]' proposed adversary proceeding claims are barred by collateral estoppel and res judicata.  The [Appellants] are not prejudiced because they have already had a full and fair opportunity to litigate their claims through the Florida Litigation.  Moreover, the New Century Trustee is immune from suit when acting as directed by an order of this Court.

(Bankr. D.I. 11562 ¶ 34).  On January 22, 2020, the Bankruptcy Court reissued the Order (originally entered on December 6, 2019 and subsequently vacated) denying the Motion to Reopen.  (Bankr. D.I. 11562 ¶ 34 & n.38).  On February 6, 2020, Appellants filed a notice of appeal with

---

[2]     Appellants' litigation before the Florida Bankruptcy Court, that was appealed to and heard by the Florida District Court and the Eleventh Circuit, along with the petition for writ of certiorari before the Supreme Court, is collectively referred to as the "Florida Litigation."

the clerk of the Bankruptcy Court seeking an appeal of the Order.  The appeal is fully briefed.  (D.I. 12, 13, 14).  The Combined Motion is also fully briefed.  (D.I. 15, 16, 17).

## II.     JURISDICTION AND STANDARD OF REVIEW

The Order was entered on January 22, 2020.  Bankruptcy Rule 8002 requires any appeal to be made by no later than fourteen (14) days after entry of that Order. Fed. R. Bankr. P. 8002(a)(1).  That 14-day appeal period therefore expired on February 5, 2020.  *Id.*  The Notice of Appeal was stamped as filed by the clerk of the Bankruptcy Court on February 6, 2020 – one day after the expiration of the statutory appeal period.  (D.I. 1).  Appellants have provided a Declaration and U.S. Post Office receipt containing a tracking number in support of their contention that their Notice of Appeal was deposited with the U.S. Post Office on February 4, 2020 for guaranteed next day delivery.  (*See* D.I. 14-1, 14-2).  The Trustee argues that the Court is required to look to the date that the notice of appeal was stamped as filed by the Clerk – as opposed to when the notice was sent – and that Appellants' failure to timely file a notice of appeal by even one day has deprived this Court of jurisdiction and the appeal must be dismissed.  (D.I. 13 at 13 (citing *In re Caterbone*, 640 F.3d 108, 110 (3d Cir. 2011) (looking at date notice of appeal was filed (not sent) in assessing timeliness); *Fletcher v. Harrington (In re Soundview Elite Ltd.)*, 512 B.R. 155, 157 n.2 (S.D.N.Y. 2014) ("filing is presumed to be made on the date file-stamped by the Clerk"); *In re Lashinger*, 1999 Bankr. LEXIS 714, *4 n.5 (Bankr. E.D. Pa. Jun. 15, 1999) ("document is 'filed' on the date the clerk file-stamps it")).

Although the Trustee is correct that filing is presumed to have been made on the date file-stamped by the Clerk, here Appellants have attached evidence sufficient to rebut that presumption, including Proof of Delivery from the U.S. Postal Service showing that delivery of a parcel with the same tracking number was made to the Bankruptcy Court on February 5, 2020 at 12:09 p.m.

(*See* D.I. 14-3). In light of the foregoing evidence that the Notice of Appeal reached the physical custody of the Bankruptcy Court during business hours on February 5, 2020, the Court finds that the Notice of Appeal was timely filed and that the Court has jurisdiction to consider the appeal. *See In re Energy Future Holdings Corp.*, 2018 WL 1479028, *4 (D. Del. 2018) (appellant's affidavit, together with United States Postal Service tracking information showing delivery attempt on Bankruptcy Court during business hours, supported Court's finding that notice of appeal was effectively "filed" with the clerk within the prescribed time period).

A district court, sitting as an appellate court in bankruptcy matters, reviews the bankruptcy court's legal determination de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof. *In re Goody's Family Clothing, Inc.*, 610 F.3d 812, 816 (3d Cir. 2010). An abuse of discretion is the standard of review for both a bankruptcy court's decision to deny a motion to reopen a case (*Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997)) and interpretation of its own confirmation order (*In re Shenango Grp. Inc.*, 501 F.3d 338, 346 (3d Cir. 2007)). A decision denying a motion to reopen "is entitled to deference, and the required showing for an abuse of discretion is high." *Citizens against Corp. Crime, LLC v. Lennar Corp. (In re Landsource Cmtys. Dev., LLC)*, 612 B.R. 484, 493 (D. Del. 2020). The "decision should not be overturned based on an abuse of discretion 'unless there is a definite and firm conviction that the court below committed a clear error of judgement in the conclusion it reached upon a weighing of the relevant facts, [i.e.,] no reasonable person would adopt the [lower] court's view.'" *Chevron Prods. Co. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 428 B.R. 590, 593 (D. Del. 2010) (quoting *Hanover Potato Prods. v. Shalala*, 989 F.2d 123, 127 (3d Cir. 1993)).

### III.   <u>ANALYSIS</u>

#### A.   **The Bankruptcy Court Correctly Applied the Doctrine of Collateral Estoppel**

Appellants challenge the Bankruptcy Court's decision not to exercise its discretion to reopen the Debtors' bankruptcy case because the doctrine of collateral estoppel barred the claims that Appellants sought to assert in the proposed adversary proceeding.  (Bankr. D.I. 11562 ¶ 34). Collateral estoppel has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.  *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc*., 458 F.3d 244, 253 (3d Cir. 2006).  Specifically, collateral estoppel bars relitigation of an issue where:

> (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.

*Id*. at 249.  Courts have also considered "whether the party being precluded had a full and fair opportunity to litigate the issue in question in the prior action" and "whether the issue was determined by a final and valid judgement."  *Id*. (citations omitted).  Applying these standards, the Bankruptcy Court determined that

> the issues about the validity of the LPOA, the Walker Affidavit and the [A]llonge are identical to the issues pursued by the [Appellants] and finally decided in the Florida Litigation.  The validity of the LPOA and the Walker Affidavit were necessary to the final judgment and the [Appellants] had a full and fair opportunity to litigate the issues in the Florida Litigation.

(Bankr. D.I. 11562 ¶ 29).

Appellants argue on appeal that collateral estoppel does not apply because the claims they seek to assert against the Trust are not identical to the claims asserted in the Florida Litigation.

(*See* D.I. 12 at 39-41).  This argument, however, is belied by the record and Appellants' own admissions.

The claims that Appellants pursued in the Florida Adversary Proceeding are the same claims they seek to pursue in the Bankruptcy Court.  By their own words, Appellants seek to reopen the Chapter 11 cases in order to bring adversary proceeding "seek[ing] a declaratory judgment that the LPOA, Allonge and Walker affidavit are *void ab initio* ...")).  (Bankr. D.I. 11553 ¶ 36).  A review of the Florida Litigation, however, shows that Appellants failed to support their arguments that those documents are *void ab initio*.  All of Appellants' arguments attacking the documents were carefully considered and rejected by the courts.  In their opposition to summary judgment in the Florida Bankruptcy Court, Appellants objected to the Walker Affidavit as inadmissible hearsay and asserted that "[t]he transfer of the Note and Mortgage to the Trust was never effected," "[a]ll attempts to effect a transfer of the Note and Mortgage in 2016 are *void ab initio*," and "[a]ll of these documents are *void ab initio* under governing law and are prima facie evidence the effective Transfer of the Note and Mortgage never occurred."  (Bankr. D.I. 11556 Ex. 4 ¶¶ 3, 9, 31-32, 42).  In support of their cross-motion for summary judgment filed in the Florida Bankruptcy Court, Appellants made the same arguments.  (*Id.* Ex. 5 ¶¶ 27, 29-30 (asserting that the Florida Defendants "derive[d] no authority from the [LPOA], to effect the transfer of the Note and Mortgage to the Trust, because the [Walker] Affidavit is inadmissible hearsay," that "[a]ll attempts to Transfer the Note and Mortgage post-petition are *void ab initio*," and that "[a]ll transfers of the Note and Mortgage to the Trust after August 4, 2006 are *void ab initio*"); *see also* Ex. 6 ¶¶ 2-3)).  Appellants advanced the same arguments on appeal to the Florida District Court (Bankr. D.I. 11556 Ex. 8 at 25-28, 40-42, 47-55; Ex. 9 at 8, 10-13, 15-17; Ex. 10 at 2-3; Ex. 12 at 8-12; Ex. 13 at 9).  Appellants continued to advance those arguments on appeal to the Eleventh Circuit (Bankr.

D.I. 11556 Ex. 15 at 11-17, 20-27, 31, 44; Ex. 16 at 2-3, 9-19). Appellants raised those arguments in their petition for writ of certiorari to the Supreme Court as well. (Bankr. D.I. 11556 Ex. 23 at 7-12, 25, 28). These Courts all upheld the validity of the LPOA, the Walker Affidavit, and the Allonge.

Having failed to prevail on their attacks on the LPOA, Walker Affidavit, and the Allonge, Appellants now seek to attack the Florida Judgment as to the validity of the documents and Loan transfer *through the Trustee*. According to Appellants, they should have the opportunity to do so because they did not specifically argue in the Florida Litigation, as they would in a reopened bankruptcy case, that the LPOA and Allonge were *void ab initio* because the Trustee lacked authority to execute them, was grossly negligent in doing so, or intended to defraud Appellants. (*See* D.I. 12 at 40). Appellants argue that the Florida Bankruptcy Court was "deceived by representations that the LPOA, Allonge, and Walker Affidavit were authorized by the Delaware Bankruptcy Court," and that those documents "were executed in furtherance of perpetration of fraud." (*Id*. at 39). Setting aside for the moment that paragraph 69 of the Modified Confirmation Order clearly authorized the Trustee to execute the documents, the record supports the Bankruptcy Court's determination that Appellants had a full and fair opportunity to litigate – and did in fact litigate – the validity of the transfer of the Loan, the Walker Affidavit, LPOA and Allonge, arguing, that they were "*void ab initio*" in the Florida Adversary Proceeding. Appellants' opportunity to litigate the validity of those documents included a lack of authority to execute them and the new arguments Appellants would assert in a reopened bankruptcy case. (Bankr. D.I. 11556, Ex. 4, ¶¶ 3, 9, 31-32, 42; Ex. 5, ¶¶ 27, 29-30; Ex. 6, ¶¶ 2-3, 5). The validity of those documents has been litigated and adjudicated.

Appellants argue that the Florida Judgment could not have finally determined this issue because the Florida Bankruptcy Court lacked jurisdiction to interpret the Modified Confirmation Order.  (*See* D.I. 12 at 40).  The Court disagrees.  As the Trustee correctly argues, the Florida Bankruptcy Court had jurisdiction to determine whether the Loan was enforceable based on the evidence presented to it.  *See* 28 U.S.C. §§ 157(b)(1)-(2)(A), (B), (K), (O); § 1334.  This statutory grant includes the jurisdiction to determine whether evidence before the Florida Bankruptcy Court was valid and admissible, and the appropriate probative value to attribute to it.  *Id.*  Notably, the LPOA, in relevant part, states that:

> [t]he Liquidating Trust makes no representations, warranties or covenants to Deutsche Bank regarding the validity, legality or enforceability of this Limited Power of Attorney, any of the provisions hereof or any document executed by Deutsche Bank pursuant to this Limited Power of Attorney . . . .

(Bankr. D.I. 11556, Ex. 3 at 2).  Thus, the LPOA was issued with the understanding that the court in the situs where the property was located would ultimately determine whether it was sufficient to effectuate the subject transfer.  (Bankr. D.I. 11563, 39:11-21).  The same holds true for the Walker Affidavit as a routine business records affidavit.  The Florida Bankruptcy Court had subject matter jurisdiction to (and did) determine all issues with respect to the Walker Affidavit and the LPOA, and an interpretation of the Confirmation Order was not required for the Florida Bankruptcy Court to do so.

Finally, Appellants statements make clear their intent to collaterally attack the Florida Judgment by reopening the Debtors' cases.  As Mr. Lynch stated:

> there is no doubt I would go back to the Florida court with that declaratory judgment and say to them hey, you ruled based on that court's order, and that court says the order wasn't really what they say it was. So I'm not denying that I would go back to the court and say that. . . .  I'm going to file a motion for an injunction against the

> Florida defendants preventing them from using those documents for
> any and all purposes until this issue is settled.

(Bankr. D.I. 11563, 36:1-6; 9-12); D.I. 12 at 30 ("it is our intent to vacate the FLBKC judgment").

Appellants do not seek to assert different claims, but rather to achieve a different result. That is

not permissible. The Bankruptcy Court did not commit reversible error when it determined that

collateral estoppel applied to the claims Appellants seek to assert in the reopened chapter 11 cases.

### B.    The Bankruptcy Court Correctly Applied the Doctrine of Res Judicata

Res judicata provides a "dispositive effect to a prior judgment if a particular issue, although

not litigated, could have been raised in the earlier proceeding" and applies when there is a "(1) final

judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a

subsequent suit based on the same cause of action." *Bd. of Trs. of Trucking Emps. Welfare Fund

Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992). "Courts should not apply this conceptual test

mechanically, but should focus on the central purpose of the doctrine, to require a plaintiff to

present all claims arising out of the same occurrence in a single suit." *Churchill v. Star Enter.*,

183 F.3d 184, 194 (3d Cir. 1999).

In deciding whether two suits are based on the same cause of action, courts take a "broad

view" to see if there is "an essential similarity of the underlying events giving rise to the various

legal claims." *U.S. v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984). Courts should

consider such factors as

> (1) whether the acts complained of and the demand for relief are the
> same (that is, whether the wrong for which redress is sought in the
> same in both actions); (2) whether the theory of recovery is the
> same; (3) whether the witnesses and documents necessary at trial are
> the same (that is, whether the same evidence necessary to maintain
> the second action would have been sufficient to support the first);
> and (4) whether the material facts alleged are the same.

*Id.* Applying this standard, the Bankruptcy Court determined:

> there was a final judgment on the merits in the Florida Litigation
> and . . . there was privity between the parties . . . The [Appellants']
> proposed adversary proceeding complains of the same acts, is based
> on the same theory of recovery (i.e., the lack of authority to create
> and the invalidity of the LPOA and the Walker Affidavit), involves
> the same disputed documents and evidence, and the same underlying
> material facts.

(Bankr. D.I. 11562 ¶ 32).  The Court finds no error in the Bankruptcy Court's determination that res judicata barred the claims that Appellants sought to assert in their proposed adversary proceeding.

### 1.     Privity

Appellants argue privity does not exist between the Trustee and the Florida Defendants because the "Securitized Trust is not a creditor with an interest in the [Trust], and the [Trust] has no interest in the Note or Mortgage."  (D.I. 12 at 42).  Appellants' argument, however, ignores the fact that the Securitized Trust is the Trust's successor-in-interest with respect to the Loan, and, as the Delaware Bankruptcy Court correctly found, privity therefore exists "because of the 'mutual or successive relationship to the same right of property.'"  (Bankr. D.I. 11562 ¶ 30 (quoting *Greenway Center, Inc. v. Essex Ins. Co.,* 475 F.3d 139, 149 (3d Cir. 2007))).  This relationship is also evident from the relief sought by Appellants in their Motion to Reopen (i.e., the documents evidencing the transfer of the Loan are "*void ab initio*" and therefore the Loan is unenforceable); if such relief were granted, it would adversely affect the Florida Defendants.  *Cf. Mertes v. Mertes*, 350 F. Supp. 472, 475 (D. Del. 1972) ("Res judicata may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants, where there is a close or significant relationship between successive defendants.") (citing *Bruszewski v. U.S.*, 181 F.2d 419, 422 (3d Cir. 1950)).  The Court finds no error in the Bankruptcy Court's determination that the privity requirement is satisfied.

### 2. The Motion to Reopen Seeks to Assert the Same Causes of Action

Here, Appellants seek here to litigate the same causes of action that were fully and finally adjudicated in the Florida Litigation.  In challenging the enforceability of the Loan in the Florida Adversary Proceeding, Appellants sought a ruling that the Walker Affidavit, LPOA, and Allonge were *void ab initio*.  (Bankr. D.I. 11556 Ex. 4, ¶ 42).  Having been denied, they now seek the same ruling from the Delaware Bankruptcy Court (Bankr. D.I. 11553 ¶ 36 ("LPOA, Allonge and Walker affidavit are *void ab initio*") so that they can "vacate the FL [J]udgment" (D.I. 12 at 30).  Notwithstanding that they seek the same relief here, Appellants argue that the causes of action in the Florida Litigation are different from those they intend to assert in the Delaware Bankruptcy Court.  (*See* D.I. 12 at 43-48).  Any attempt to differentiate the causes of action in the Florida Litigation from those Appellants would assert in a reopened bankruptcy, however, is belied by the record and runs afoul of the guiding principle that courts "take a broad view" in deciding whether two suits are based on the same cause of action.  *Athlone Indus., Inc.*, 746 F.2d at 984.  Therefore, even if some of Appellants' assertions were correct, "[i]t is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions."  *Blunt v. Lower Merion Sch. Dist.*, 77 F.3d 247, 277 (3d Cir. 2014).

Taking the requisite broad view, the acts complained of, material facts, and demand for relief are all the same – the Walker Affidavit, LPOA, Allonge, and transfer of the Loan were invalid and, therefore, those documents should be determined to be *void ab initio* and the Loan unenforceable.  Similarly, the theory of recovery is the same – the purported lack of authority to create and the invalidity of the Walker Affidavit, LPOA, and Allonge, which documents evidenced the transfer of the Loan.  (*Id.*)  The documents necessary at trial on these issues are the same – the

Walker Affidavit, the LPOA, and Allonge, each of which was submitted to and considered by multiple courts in the Florida Litigation.  In sum, the causes of action are the same.

### 3.     The Florida Judgment Is a Final Judgment on the Merits

Although Appellants argue that the Florida Judgment cannot be a final judgment on the merits due to a lack of privity, different causes of action, and lack of jurisdiction (D.I. 12 at 48), as set forth above those arguments lack merit.  Appellants also argue that the Florida Judgment cannot be a final judgment on the merits because they did not bring their claims against the Trustee when the Florida Adversary Proceeding was filed as those claims only arose with the execution of the Walker Affidavit, LPOA, Allonge, and the submission of the Summary Judgment Motion. (D.I. 12 at 48-49).  Appellants' underlying claims against the Trustee, however, pertain to a lack of authority to create and the validity of the LPOA and Walker Affidavit.  (Bankr. D.I. 11553 ¶¶ 31-33).  Those claims have been vigorously litigated by Appellants throughout the Florida Litigation and the Florida Final Judgment (subsequently affirmed by numerous appellate courts) is a final judgment on the merits.  (Bankr. D.I. 11556 Ex. 11 at 8 ("The [Delaware Bankruptcy] Court authorized the [Trust] to execute any powers of attorney necessary to fully effectuate the transfer of mortgage loans purchased from the [] Debtors, including any required assignments of mortgage."); Ex. 17; Ex. 24).

Moreover, Appellants did not seek in the Delaware Bankruptcy Court to bring any claims against the Trustee individually, but rather solely in his capacity as Trustee and, therefore, functionally only against the Trust.  (Bankr. D.I. 11553 at 18 (amended by specifically striking the word "individually")).  Appellants are precluded from asserting otherwise for the first time on appeal.  (*See* D.I. 12 at 27-29; *Int'l Fin. Corp. v. Kaiser Grp. Int'l, Inc. (In re Kaiser Grp. Int'l,*

*Inc.)*, 399 F.3d 558, 565 (3d Cir. 2005) ("when a party fails to raise an issue in the bankruptcy court, the issue is waived and may not be considered by the district court on appeal.").

Finally, as the Trustee correctly points out, Appellants could not possibly have been harmed by the acts they now complain of because the Florida Bankruptcy Court found that "[e]ven if the Blank Indorsement and the Allonge were somehow deemed invalid, [the Florida] Defendants are still able to enforce the [N]ote as non-holders in possession with the rights of a holder" under Florida law.  (Bankr. D.I. 11556 Ex. 7 at 9).  The Bankruptcy Court properly denied Appellants' attempt to reopen the Debtors' bankruptcy cases as they clearly seek to continue to litigate claims already finally determined in the Florida Litigation which are barred by res judicata.

### C.   The Bankruptcy Court Properly Determined that the Trustee was Immune from Suit

As the Trustee correctly argues, even if Appellants' claims were not barred by collateral estoppel or res judicata, the actions that form the basis for those claims (that the Trustee executed the LPOA and directed the preparation of the Walker Affidavit) were actions that the Trustee was required to take pursuant to paragraph 69 of the Modified Confirmation Order.  (Bankr. D.I. 9957 ¶ 69).  The Trustee was only relieved of that obligation upon the entry of the Final Decree.  (Bankr. D.I. 11556, Ex. 25, ¶ 3).  Given that the Trustee was acting in compliance with and pursuant to the Delaware Bankruptcy Court's Modified Confirmation Order, the Bankruptcy Court correctly determined that the Trustee is immune from any suit brought by Appellants.  *See, e.g., Phoenician Mediterranean Villa, LLC v. Swope (In re J & S Props., LLC)*, 872 F.3d 138, 150 (3d Cir. 2017) ("[B]ankruptcy trustees are covered by quasi-judicial immunity when acting pursuant to an express court order.").

Notwithstanding the clear language of the Modified Confirmation Order, Appellants argue that the Trustee did not act within the scope of the Modified Confirmation Order when issuing the

LPOA and directing the preparation of the Walker Affidavit because he purportedly did not (a) verify that the Loan was purchased from a Debtor (because New Century Mortgage Securities, Inc. is not a Debtor), (b) require the Securitized Trust's request to be in writing, and (c) require the Securitized Trust to submit evidence supporting their request. (S*ee* D.I. 12 at 32-35). Appellants thus urge the Court to ignore the Delaware Bankruptcy Court's interpretation of paragraph 69 of its own Modified Confirmation Order and its understanding of the purpose behind that provision, a provision which was heavily negotiated before, and presented to, the Delaware Bankruptcy Court for approval. (*See* Bankr. D.I. 11570 at 41:7-14, 46:2-5). As the Third Circuit has noted, a bankruptcy court's interpretation of its own confirmation order is to be afforded substantial deference. *Shenango Grp. Inc.*, 501 F.3d at 346.

Consistent with paragraph 69 of the Modified Confirmation Order, the Securitized Trust contacted the Trust and requested the Walker Affidavit and LPOA and provided information sufficient for the Trust to conduct a business records search with respect to that request. (Bankr. 11556, Ex. 4, at Ex. 3 (Deutsche Bank's Response to Appellants' 12/29/2016 Request for Admissions) ("counsel for [Deutsche Bank] presented basic information regarding Plaintiff's loan (i.e., name of borrowers, date and amount of Note, recording information of Mortgage, and property address) to counsel for the [Trustee]")). That business records search determined:

> [f]ollowing the origination of the Loan, NCMC sold the Loan to NC Capital [Corporation] who, in turn, sold the Loan to New Century Mortgage Securities, Inc. On or about August 4, 2004, the Loan was transferred to, and securitized as part of, the [Securitized Trust].

(Bankr. D.I. 11562, n.14; Bankr. D.I. 11556, Ex. 2, ¶ 7). As required by paragraph 69 of the Modified Confirmation Order, the documents provided related to a Loan that was originated and sold by one of the Debtors – NCMC. (Bankr. D.I. 11556, Ex. 2, ¶¶ 6-7). Thus, the Trustee was acting in compliance with paragraph 69 of the Modified Confirmation Order and had proper

authority when he directed the preparation of the Walker Affidavit and executed the LPOA with respect to the Loan.  The Court finds no support for Appellants' argument that the Trustee's actions were not consistent with the Modified Confirmation Order's mandate or purpose.  (Bankr. D.I. 9957, ¶ 69) ("to fully effectuate the transfer of such [L]oan or otherwise to effect that appropriate transfer of record title or interest in such [L]oan").

The Delaware Bankruptcy Court did not abuse its discretion when, interpreting its own Modified Confirmation Order, it concluded the Trustee was "immune from suit" because "the New Century Trustee acted as specifically directed by paragraph 69 of the Modified Confirmation Order."  (Bankr. D.I. 11562, ¶¶ 33-34); *see In re Shenango Grp. Inc.*, 501 F.3d at 346.

### D.      Combined Motion and Remaining Arguments

The Combined Motion requested that the Court (i) grant oral argument with respect to the merits of the appeal, and (ii) take judicial notice of certain documents contained in public filings. (D.I. 15).  With respect to the first request, the Combined Motion articulated no specific reason why oral argument would be helpful to the Court.  The Court denies the request for oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

With respect to the second request, Appellants ask the Court take judicial notice of two documents: (i) an *Expedited Motion for an Injunction to Protect this Court's Final Judgment from Collateral Attacks by Plaintiffs in Different Forums* filed in the Florida Bankruptcy Court by the Florida Defendants (D.I. 15-1), and (ii) an Order of the Florida Bankruptcy Court denying that motion (D.I. 15-2) (collectively, "the New Documents").

Appellants cite cases for the propositions that (i) a court may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion,[3] and (ii) whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case.[4]  (D.I. 15 at 2-3).  As recognized in one case cited by Appellants, however, "the general rule [is] that courts will not travel outside a record in order to notice proceedings in another case, even between the same parties in the same court, unless the proceedings are in evidence."  *Funk v. Commissioner*, 163 F.2d at 801.

Here, the proceeding with respect to the New Documents was never put into evidence with the Bankruptcy Court (Bankr. D.I. 11553 & 11562), and it is unclear what the Court has been asked to notice.  Appellants simply state that "[t]he Court may . . . look to the existence of other judicial proceedings to see if they contradict" legal conclusions and factual claims at issue in this appeal.  (*See* D.I. 15 at 2).  As the Trustee observes, the New Documents are ostensibly submitted to support Appellants' arguments that (a) "under the first-filed rule the [Delaware Bankruptcy Court] should have deferred ruling until the Florida Bankruptcy Court decided the issue [of collateral estoppel or res judicata]" and (b) the Trustee himself is "precluded from raising either collateral estoppel or res judicata in the [Delaware Court] proceedings" by the doctrine of collateral estoppel (collectively, "the New Arguments").  (*See* D.I. 12 at 36-38).  The record is clear, however, that Appellants neither presented the New Documents to the Bankruptcy Court nor

---

[3]       *See* D.I. 15 at 2-3 (citing *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.,* 181 F.3d 410, 426-27 (3d Cir. 1999) and *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998)).  These cases, which Appellants cite in support of judicial notice, are arguably inapposite, as those cases, unlike the instant appeal, arise in the context of a motion to dismiss a complaint.  *See Southern Cross*, 181 F.3d at 426 ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings. . . ."); *City of Pittsburgh*, 147 F.3d at 259 (same).

[4]       *See* D.I. 15 at 2-3 (citing *Funk v. Commissioner*, 163 F.2d 796, 800-01 (3d Cir. 1947)).

briefed or argued the New Arguments for the Delaware Bankruptcy Court's consideration.  (*See* Bankr. D.I. 11553; Bankr. D.I. 11562).[5]  The New Arguments were not listed by Appellants as issues presented on appeal to this Court.  (*See* Bankr. D.I. 11568).

The Court agrees with the Trustee that the New Documents and the New Arguments are being presented on appeal for the first time, were not "passed on" by the Bankruptcy Court, and this Court should not take judicial notice of or otherwise consider them.  *See, e.g., Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule . . . that a federal appellate court does not consider an issue not passed on below."); *Teleglobe Commc'ns. Corp. v. BCE, Inc. (In re Teleglobe Commc'ns. Corp.)*, 493 F.3d 345, 376 (3d Cir. 2007) (appellate court will not consider issues on appeal that were not properly argued and decided by the lower court); *Webb v. City of Philadelphia*, 562 F.3d 256, 261 (3d Cir. 2009) (appellate court will not consider new evidence on appeal); *see also* 10 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2716, at 650-54 (2d ed. 1983) ("[On appeal t]he parties cannot add exhibits, depositions, or affidavits to support

---

[5]     Appellants mentioned the existence of the New Documents to the Delaware Bankruptcy Court:

> I informed the [Florida Bankruptcy] court of what I was doing [in seeking to reopen the New Century bankruptcy cases], they – the [Florida] Defendants filed the motion for the injunction to prevent me from doing it based on collateral estoppel and res judicata.  And the [Florida Bankruptcy] court, it was set for a hearing, the hearing was held on October 28th, and the [Florida Bankruptcy] court denied it.  Outright.

(Bankr. D.I. 11562 at 52:9-14).  The record reflects, however, that the New Documents were not submitted to the Delaware Bankruptcy Court, nor was the Delaware Bankruptcy Court provided with a docket reference or other citation to locate those documents. Moreover, Appellants never included in their motion papers or argued during oral argument that the Delaware Bankruptcy Court should have deferred ruling due to the "first filed rule" or that the Trustee was precluded from raising collateral estoppel or res judicata in his objection to the Appellants' motion to reopen the New Century bankruptcy cases.  *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("[D]istrict courts cannot concoct or resurrect arguments neither made nor advanced by the parties.").

their position nor can they advance new legal theories or raise new issues in order to secure a reversal of the lower court's determination.").

Even assuming the New Documents and New Arguments were not being raised for the first time on appeal, however, the New Documents are not relevant to the New Arguments. The Florida Bankruptcy Court did not make any findings with respect to collateral estoppel or res judicata. Rather, the Florida Bankruptcy Court merely declined to exercise its discretion to issue an injunction under the All Writs Act and denied the Florida Defendants' motion. (*See* D.I. 15-2 at 2). In doing so, the Florida Bankruptcy Court appropriately left it to the Delaware Bankruptcy Court to decide whether or not reopening the New Century bankruptcy cases was warranted, which is settled law. *See* 11 U.S.C. § 350(b) ("A case may be reopened *in the court in which such case was closed* to administer assets, to accord relief to the debtor, or for other cause.") (emphasis added); 28 U.S.C. § 157(b)(1)-(2)(A) ("referred to bankruptcy judges for the district . . . [who] . . . may hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11 . . . [including] matters concerning the administration of the estate"); *Zinchiak v. CIT Small Bus. Lending Corp. (In re Zinchiak)*, 406 F.3d 214, 223 (3d Cir. 2005) ("bankruptcy courts have broad discretion to reopen cases after an estate has been administered"). Thus, the New Documents, in general, and the Florida Bankruptcy Order, in particular, do not support a finding that the Bankruptcy Court should have deferred ruling in favor of the Florida Bankruptcy Court under the "first-filed rule" or that the Trustee was precluded from raising either collateral estoppel or res judicata in his objection to Appellants' Motion to Reopen.

## IV.    CONCLUSION

The Bankruptcy Court did not commit reversible error when it determined "the [Appellants] are not prejudiced because they have already had a full and fair opportunity to litigate

their claims through the Florida Litigation." (Bankr. D.I. 11562 ¶ 34). The Bankruptcy Court properly exercised its discretion when it concluded that reopening the Debtors' bankruptcy cases would serve no valid purpose. (*Id*.). For the reasons set forth herein, the Combined Motion will be denied and the Order will be affirmed. An appropriate order follows.